To this declaration the defendant pleaded non assumpsit, and the cause now came on to be tried.
The plaintiff produced three several bonds, payable in December, 1779, 1780, 1781, by Lewis to Taylor; each of them endorsed with an assignment from Taylor to Alston, the plaintiff on 10 December, 1782; and he proved on his part that he agreed to take them upon condition that if he could not get the money of Lewis, he should have recourse to Taylor; upon which Taylor assigned them. He proved, also, that within two months or less from the date of the assignment he applied to Lewis, and procured some negroes in part discharge of the debts, and that on 8 January, 1784, he put the bonds into the hands of an attorney in Virginia, to bring suits upon, which were brought accordingly on 27 April, 1785. That on 10 December, 1784, he received seventeen thousand weight of tobacco as a further payment, and that in April, 1791 (the defendant in the meantime having died), the suits were called *Page 305 
and dismissed. That on 19 July, 1790, he caused writs to be issued against the executors, and at July Term, 1791, in Caswell County Court he obtained judgment. That previous to this the executors removed to South Carolina, and that on 26 April, 1791, he sued them upon these judgments in South Carolina. That in October, 1792, the judgments were reversed in this Court for error in the proceedings, and that in November following, the jury were impaneled upon his suits in South Carolina, and found against him; and that on 13 October, 1792, he gave notice of these proceedings to Taylor, and that he (383) intended to resort to him.
On the part of the defendant it was proven that when the contract was made, it was insisted on by Alston that the bonds should be assigned by Taylor, to the end that if he failed to get the money of Lewis, he might then resort to Taylor; and that Taylor upon this made the assignment, saying, "the circumstances of Lewis are good, and if he does not pay you, come to me, and I will go with you and see you paid." That not long afterwards, within two months, Alston bought some negroes from Lewis, and said he could have had more, but the price was rather too high; he thought it most proper to wait till some future time, when he might have it in his power to make a better bargain; and said to Taylor, "You are clear; he has property enough." It was further proven that the bonds endorsed were made in Virginia, and there payable.
I am sorry for it, as a cause similar to the present came on at Salisbury at the last term, and his opinion was that the rules respecting negotiable instruments did not apply to unnegotiable ones, though in fact passed by a debtor to his creditor. I mention this opinion now because, though I then differed, I am not now sure but it was the right one. These bonds were not negotiable in this State, and the assignment made here according to the case cited from Bl. Rep., must be governed by the laws of this country, and is to be considered as the endorsement of paper not negotiable, and may confer on the assignee only the powers attributed to such assignments in the argument for the plaintiff; and if notice of nonpayment by the obligor is not necessary, the plaintiff may probably be entitled to recover on the special contract laid in the declaration, which is, that the endorsee should sue in the name of the obligee, and in case of his not being able to obtain satisfaction, should resort to Taylor. The greater part of the time elapsed since the *Page 306 
endorsement has been employed by the endorsee in pursuing the obligor; he sued within thirteen or fourteen months, and has continued to sue ever since.
The jury found for the plaintiff, and he had judgment.
NOTE BY REPORTER. — On the trial of this cause the following points occurred and were decided: The defendant offered a deposition, (395) the notice for which was that it would be taken on a certain day named, at Halifax Courthouse, in Virginia; the caption expressed a taking on that day, at the house of Manning, at Halifax Courthouse; and a witness sworn in court proved that Manning's house stood about 80 yards from the courthouse.